IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOLLY SCOTT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | NO. 04-4157 |
| Commissioner of | : | |
| Social Security Administration | : | |

**REPORT AND RECOMMENDATION**

THOMAS J. RUETER                                                                July      , 2005
United States Magistrate Judge

  Plaintiff, Holly Scott, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act").

  Each party filed a motion for summary judgment. For the reasons set forth below, this court recommends that plaintiff's motion for summary judgment be DENIED, and the Commissioner's motion for summary judgment be GRANTED.

**I.  FACTUAL AND PROCEDURAL HISTORY**

  Plaintiff filed an application for SSI on October 29, 2001, alleging disability since October 27, 2001. (R. 16, 113-17, 127.) The claim was denied initially and a request for a hearing was timely filed on May 23, 2002. (R. 71.) A hearing was held on March 25, 2003, before Administrative Law Judge ("ALJ") Mark D. Newberger. (R. 34-62.) Plaintiff, represented by her attorney, appeared and testified. Id. Dennis Mohn, a vocational expert ("VE"), also appeared and testified. Id. In a decision dated August 8, 2003, the ALJ found that

plaintiff was not disabled under the Act. (R. 13-24.) The ALJ made the following findings:

1. Claimant amended her alleged onset date to October 27, 2001.

2. Since October 27, 2001, the claimant has not engaged in substantial gainful activity.

3. The medical evidence establishes that at all relevant times the claimant has [sic] the following impairments, which in combination are severe: lumbar disc disease, obesity, hypothyroidism, status post fracture of 5th metatarsal of right foot and dysthymic disorder.

4. At all times relevant to this decision, the claimant's impairments, singly and/or in combination, do not meet or medically equal any impairment listed in Appendix 1, Subpart P, Regulation No. 4.

5. The testimony of the claimant is not found to be fully credible. The undersigned finds that the claimant's statements concerning her ability to work and the severity of her limitations are inconsistent and not credible to the extent those statements allege a level of disabling symptoms which exceed what the objective evidence and clinical findings could reasonably be expected to produce, and are further inconsistent with her demonstrated activities discussed in the body of this decision.

6. At all relevant times, the claimant's residual functional capacity does not preclude a range of unskilled light and/or sedentary exertion work. Claimant is not precluded from lifting/carrying up to 20 pounds at a time, standing/walking up to six hours in an eight-hour workday, and sitting for two hours. However, claimant is subject to the following five non-exertional limitations: (1) Claimant can only occasionally climb, balance, stoop to floor level, kneel, crawl and crouch (She is able to stoop to desk level); (2) Claimant is able to perform simple and routine jobs but she is restricted from complex or detailed work; (3) Claimant is able to perform objectively low stress jobs but she is restricted from objectively high stress jobs; (4) Claimant is restricted from work at heights and work near dangerous machinery; and (5) Claimant requires a sit/stand option at 45 minute intervals.

7. Claimant has past relevant semi-skilled work [experience] performed at the light and sedentary exertion levels. However, in light of the non-exertional limitations set forth above, at all times relevant to this decision the claimant is precluded from [performing] her past relevant work.

> 8. At all relevant times the claimant is regarded as a younger individual with a high school education and no transferable skills.
>
> 9. As claimant is precluded from the a [sic] full range of unskilled light/sedentary work, medical/vocational Rule 202.21, which directs a finding of "not disabled," is used only as a framework for decisionmaking.
>
> 10. Despite the additional non-exertional limitations identified herein, there remain a significant number of jobs in the national economy that the claimant can perform. The light jobs included: Small Products Assembler–11,000 regional/1,700, 000 national; Electronics Worker–3,000 regional/360,000 national; Garment Sorter–2,700 regional/180,000 national and Hand Trimmer/Inspector–600 regional/46,00 national. The sedentary jobs included: Semi-Conductor Processor–700 regional/58,000 national; General Table Worker–3,000 regional/360,000 national; Hand Painter–300 regional/31,000 national; and Automatic Grinding Machine Operator–2,000 regional/140,000 national.
>
> 11. At all times relevant to this decision, the claimant has not been under a "disability" as defined in the Social Security Act.

(R. 22-23.)

On September 5, 2003, plaintiff filed a request for review of the decision of the ALJ that was denied by the Appeals Council on June 29, 2004. (R. 5-7.) The ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401

(1971)). Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum, 48 F.3d at 117. This court may not weigh evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993)). As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 423(d)(5). A claimant satisfies this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). Once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience the claimant has the ability to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

The Commissioner decided this matter by utilizing the five step sequential evaluation process established by the Department of Health and Human Services to determine whether a person is "disabled." This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. § 416.920.

### III.   BACKGROUND

#### A.   Testimony of Plaintiff, March 25, 2002

Plaintiff was born December 15, 1963. At the time of the hearing she was 5'2" tall, and weighed 245 pounds. (R. 38.) Plaintiff was separated from her husband and had a twenty-two year old daughter. (R. 39.) Plaintiff lived with her boyfriend for three and one-half years. Id. Plaintiff earned a high school GED. (R. 41.) Plaintiff received food stamps and public assistance prior to the hearing, but those benefits were terminated.[1] (R. 40.)

Plaintiff suffered low back pain which became "debilitating" approximately two to three times per week; the pain radiated into her legs.[2] (R. 44-45.) Plaintiff stated that she took

---

[1]   Plaintiff explained that her benefits were terminated due to a settlement she received as a result of an automobile accident which occurred in January 2001. She was awaiting a settlement from a second automobile accident which occurred in October of that same year. (R. 39-40, 166.)

[2]   Plaintiff indicated that her left leg pain began "about a year and a half ago shortly after the accident. The second one that is." (R. 45.) Plaintiff characterized her pain as a 6.5 or 7, on a 10 point scale. (R. 55.)

methadone to treat her pain.[3]  (R.45-46.)  Plaintiff also had a hypothyroid condition for which she took Levithroid.  This condition caused weight gain.[4]  (R. 46.)  Plaintiff suffered from a "bad stomach" which she treated with Nexium.  (R. 46-47.)  Plaintiff was counseled by a psychiatrist and a psychologist for anxiety related problems.[5]  (R. 47.)  She was prescribed Vistral and Elavil.  Id.

With regard to her daily activities, plaintiff went to doctors' appointments and counseling sessions.  She performed some household chores, cooked meals and shopped with assistance.  (R. 49, 56.)  Plaintiff was able to drive, but after a period of time it caused her pain.[6]  (R. 53-54.)  Plaintiff reported that her hobbies were crafting, making potpourri and doing limited gardening.  (R. 49-50.)  Plaintiff took two trips since her second accident and occasionally visited wineries with her boyfriend.  (R. 51-52.)  Plaintiff previously shot pool professionally; however, her impairments precluded her from this activity.  (R. 51.)

Plaintiff's past work included bartending, waitressing, cooking, operating a drill press and caring for animals.  (R. 43-45.)  In addition, plaintiff was a licensed cosmetologist and esthetician.  (R. 43-44.)  Plaintiff worked as a bartender from September 2001 until January 2002, and as a cooked from July 2000 to September 2000.  (R. 42.)

---

[3]  Plaintiff experienced dizziness, blurred vision and skin irritation from this medication.  (R. 54.)

[4]  Plaintiff was prescribed Meridia to combat weight gain.  (R. 48.)

[5]  Plaintiff saw her psychiatrist bi-monthly, and her counselor bi-weekly.  She experienced memory loss, general anxiety, fatigue and major depression; these symptoms were addressed in her sessions.  (R. 47-48.)

[6]  Plaintiff was able to drive for over one hour to the hearing, but anticipated that she would be unable to drive home due to pain.  (R. 53-54.)

B.      **Testimony of VE, March 25, 2002**

At the administrative hearing, VE Dennis Mohn testified that plaintiff's past relevant job as a cosmetologist was classified as medium, semi-skilled work. The bartending position was a light duty, semi-skilled job, as was the waitress position. (R. 57.)

The ALJ posed several hypothetical questions to the VE. For purposes of the hypotheticals, the ALJ asked the VE to consider an individual of plaintiff's age whose education was limited to the twelfth grade level. Id. The ALJ also indicated that the individual was totally precluded from performing medium and heavy exertional work, but could perform sedentary and light work with the following limitations: only occasionally climbing, balancing, stooping to floor level, kneeling, crawling and crouching. Furthermore, the individual was able to perform simple, routine tasks, but was restricted from complex or detailed work. The individual also was precluded from high stress jobs, work near heights and work near dangerous machinery. Finally, the ALJ instructed that the individual required a sit/stand option at forty-five minute intervals. (R. 58.)

The VE testified that an individual with such limitations could not do plaintiff's previous work. Id. However, such an individual could perform light work as a bench assembler, electronics inspector, garment sorter or folder, and hand trimmer. These jobs existed in substantial numbers in the local and national economies. (R. 58-59.) With respect to sedentary jobs, the VE opined that an individual with the aforementioned skills and limitations would be able to perform the duties of semiconductor processor, general table worker/preparer, hand painter, and automatic grinding machine operator. (R. 59-60.) These positions also existed in substantial numbers in the regional and national economies. Id.

In response to the ALJ's question, the VE stated that an individual with the limitations alleged by plaintiff at the hearing would be unable to perform any unskilled sedentary or light jobs. (R. 60.)  Accordingly, the VE opined that the type of pain and inability to perform consistently throughout the day described by plaintiff would preclude employment.  Id.

### C. Medical Evidence

Medical evidence which predates plaintiff's onset date revealed that plaintiff had an inoperable meningeal cyst which caused left leg pain. (R. 170.)  Plaintiff stopped working in 1998 due to back pain. (R. 167.)  However, plaintiff was attending school at that time.[7]  Id.  Plaintiff was involved in two motor vehicle accidents which occurred in January and October of 2001. (R. 166.)  As a result of the first accident, plaintiff suffered a non-displaced fracture of her right fifth metatarsal which was repaired surgically. (R. 331, 456, 502-03, 514.)  Plaintiff complained of neck and low back pain subsequent to the second accident. (R. 331.)

An April 2001 MRI of plaintiff's left elbow was normal, and showed no evidence of occult fracture or other significant soft tissue injury. (R. 318.)  An MRI of plaintiff's right foot taken in August 2001 showed a possible metallic artifact and marrow edema at the base of the second metatarsal. (R. 179.)  An x-ray of the right foot taken in September 2001 yielded normal results. (R. 176.)  Treatment notes from October 31, 2001 related that plaintiff's complaints of pain were attributable to various soft tissue injuries. (R. 164.)

An x-ray of plaintiff's lumbar spine taken in November 2001 showed normal osseous structures and two calculi within her left kidney.  A CT scan showed only moderate

---

[7] A treatment note dated October 27, 1998 stated the following: "Patient comes for follow-up visit.  She continues to have chronic low back pain which has made it impossible for her to work.  She is apparently attending school once again, however." (R. 167.)

degenerative disc disease. (R. 173, 516.) A cervical x-ray revealed degenerative narrowing of the C6-7 disc space with anterior and posterior spurring and some diminution in extension excursion. X-rays of plaintiff's thoracic spine were normal. (R. 174.)

Records from Creative Health Services dated January 2002 relate that plaintiff was diagnosed with dysthymia. (R. 264.) During this evaluation, plaintiff indicated that she smoked marijuana every morning to relieve her stomach pain. (R. 265.) At that time, plaintiff was diagnosed with a Global Assessment of Functioning Score ("GAF") of fifty-three.[8] (R. 264.) In March 2002, Neal Stolar, M.D., performed a psychiatric evaluation of plaintiff. (R. 282-85.) Plaintiff reiterated that she used marijuana on a daily basis. (R. 283.) Dr. Stolar diagnosed cannabis dependence and generalized anxiety disorder; he assessed plaintiff with a GAF of 53. (R. 284-85.) Dr. Stolar also opined that plaintiff might be able to decrease her Xanax dosage. (R. 285.)

Robert W. Mauthe, M.D., performed a physiatric consultation of plaintiff on March 18, 2002. (R. 181-82.) Plaintiff related that she was able to perform activities of daily living independently. She also was able to drive a car. (R. 182.) A physical examination revealed that plaintiff was able to go up on her toes, but was unable to do it unilaterally on her right foot. Id. Dr. Mauthe reported that plaintiff exhibited no atrophy, and possessed normal reflexes, sensation and strength. In addition, plaintiff was very flexible in her hips with significant internal and external rotation. Id. Dr. Mauthe diagnosed neck, low back and right

---

[8] The GAF scale is used to report a clinician's judgment regarding an individual's overall level of functioning. A GAF in the 51-60 range indicates moderate symptoms (e.g., flat affect and circumstantial speed, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders, 30-32 (4th ed. 1994) ("DSM-IV").

foot pain, recommended that plaintiff continue with conservative care and therapy, and prescribed no medication. Id. An MRI of plaintiff's lower spine taken in March 2002 showed disc bulging without a focal disc herniation, a possible minimal central focal disc herniation at L5-S1 and a right upper sacral Tarlov cyst. (R. 370.) These findings were consistent with an earlier examination. Id.

An x-ray of plaintiff's right foot taken in May 2002 revealed no metallic foreign body overlying the right foot. (R. 368.) On June 12, 2002, Dr. Mauthe confirmed that films of plaintiff's right foot showed completely healed fractures with no evidence of abnormality or metallic artifact. (R. 333.) Upon physical examination, plaintiff exhibited no neurological signs or symptoms, and a straight leg raising test yielded normal results. Plaintiff was diagnosed with neck and low back pain. Id.

Dr. Mauthe prepared a report for plaintiff's attorney on June 17, 2002. (R. 330-32.) Dr. Mauthe reported that plaintiff had been treated conservatively with physical therapy. (R. 332.) He also related that examinations revealed no neurologic abnormalities. Id. Dr. Mauthe concluded that although plaintiff's metatarsal fracture had healed, she would continue to experience intermittent foot pain and swelling that would increase with prolonged standing or walking. Id. A thoracic spine x-ray taken in July 2002 showed only mild degenerative changes at the T7-8 level. (R. 367.)

John Detweiler, P.T., performed a functional capacity evaluation on plaintiff in July 2002. (R. 191-93.) Test results indicated that plaintiff could perform sedentary work. (R. 193.) However, plaintiff scored only a fifty-two percent on the validity criteria; thus, the test results were equivocal. (R. 192.)

In August 2002, plaintiff complained of low back pain which radiated into her right leg. (R. 326.) An MRI did not show any significant anatomic change, aside from some increased disc space narrowing. Id. Physical examination revealed negative straight leg raising, intact deep tendon reflexes and no obvious weakness. Id. Results of EMG testing and nerve conduction studies were normal. Id. There was no evidence of radiculopathy, peripheral nerve entrapment or tarsal tunnel. (R. 327.) Dr. Mauthe continued to recommend conservative treatment. Id.

A physical examination performed by Dr. Mauthe in February 2003 yielded essentially normal results. Plaintiff exhibited no gross motor or other focal deficits, and examination was negative for bone or joint symptoms, myalgias, back pain or bone pain. (R. 241.) During another February 2003 examination, Dr. Mauthe saw no lower extremity neurological signs or symptoms. Plaintiff's straight leg raising test was negative as was her EMG. (R. 280.) Dr. Mauthe diagnosed right metatarsal fracture and chronic back pain. Id. Despite the essentially normal findings, Dr. Mauthe concluded that "the patient's current complaints of pain preclude any regular or sustained gainful employment in combination with her educational limitations." Id.

Philip Spergel, Ed.D., performed a vocational evaluation of plaintiff at the behest of plaintiff's personal injury attorney. (R. 143-61.) Plaintiff estimated that her driving tolerance was forty-five minutes at one time, as was her tolerance for standing. (R. 147-48.) Plaintiff informed Dr. Spergel that Dr. Mauthe was the only physician who placed any limitations on her. Dr. Mauthe only restricted plaintiff from heavy lifting. (R. 149.) After reviewing documentation submitted by plaintiff's personal injury attorney, Dr. Spergel concluded, inter alia, that

11

plaintiff's:

> vocational and earning potential have been markedly compromised as a result of the injuries she sustained in the motor vehicle accident of October 27, 2001 . . . since the motor vehicle accident of October 27, 2001 [plaintiff] has developed exacerbated neck and low back pain as well as increased pain in her right foot, apparently due to an altered gait. She is unable to sit or stand for any significant period of time, is distracted by her pain and has difficulty concentrating.

(R. 16.)

## IV.  DISCUSSION

Plaintiff was considered a "younger person" under the Act at all times relevant to the decision of the ALJ. (R. 19, 22.) See 20 C.F.R. § 416.963. The ALJ found that the evidence of record supports a finding that plaintiff has impairments that are severe within the meaning of the regulations, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R. 20.) Ultimately, the ALJ concluded that plaintiff, although unable to return to her past relevant work, was able to make an adjustment to work that existed in significant numbers in the national economy. (R. 23-24.)

Plaintiff presently contends that substantial evidence does not support the ALJ's decision that plaintiff is not disabled. Specifically, plaintiff avers that the ALJ failed to give proper weight to the opinion of Dr. Spergel, a psychologist who examined plaintiff at the behest of plaintiff's attorney in connection with an automobile accident. Defendant maintains that substantial evidence supports the decision of the ALJ. (Def.'s Br. Supp. Summ. J. at 10-14.)

After a review of the evidence in this case, the court finds that substantial evidence supports the decision of the ALJ that plaintiff was not disabled under the Act. The Act requires a plaintiff to prove:

> [an] inability to engage in any substantial gainful activity by reason of any

12

> medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382(a)(3)(A). A claimant must also show that she has a physical or mental impairment of such severity that she:

> is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 1382(a)(3)(B).

The ALJ analyzed plaintiff's physical and mental limitations before he determined that plaintiff was able to perform work identified by the VE. With respect to plaintiff's physical limitations, medical evidence indicated that plaintiff experienced a non-displaced fracture of her right fifth metatarsal as a result of a January 2001 automobile accident. As the ALJ related in his opinion, progress notes of July 12, 2001 revealed that this fracture had healed. In addition, x-rays taken on September 20, 2001 were unremarkable. (R. 18, 176, 368.) Furthermore, Dr. Mauthe noted in June 2002 that x-rays revealed completely healed fractures, with no evidence of abnormality or metallic artifact. (R. 18, 333.)

Plaintiff also complained of neck and back pain which resulted from her October 2001 automobile accident. However, an x-ray of plaintiff's cervical spine taken in November 2001 revealed only degenerative narrowing of the C6-7 disc space. (R. 174.) An MRI taken in March 2002 showed only disc bulging at L2-3 and L3-5, with no focal disc herniation. (R. 370.) In March 2002, Dr. Mauthe's examination produced a negative straight leg-raising test, and no

sign of atrophy.  (R. 18, 182.)  A June 2002 examination revealed no neurological signs or symptoms; a straight leg-raising test was negative.  (R. 18, 333.)  EMG and nerve conduction studies performed in August 2002 were normal, and showed no electrodiagnostic evidence of radiculopathy, peripheral nerve entrapment or tarsal tunnel.  (R. 327.)  An August 2002 examination performed by Dr. Mauthe revealed a negative straight leg-raising test, intact deep tendon reflexes, and no obvious weakness.  (R. 326.)  Upon physical examination in February 2003, Dr. Mauthe reported that plaintiff exhibited no gross motor or other focal deficits.  Plaintiff's examination was negative for bone and joint symptoms, myalgias, back pain or bone pain.  (R. 18, 241.)  Moreover, Dr. Mauthe recommended only conservative treatment.  (R. 182, 327, 332.)

       With respect to plaintiff's mental impairments, the ALJ noted that claimant scored twenty-eight out of thirty on a "mini mental status examination" performed by Dr. Stolar.  (R. 19.)  She was oriented times three and possessed good memory and immediate recall.  Plaintiff was assessed with a GAF of fifty-three, a score which indicates only moderate symptoms.  (R. 19, 284-85.)  The ALJ assessed the evidence pertaining to plaintiff's mental limitations, and concluded that plaintiff did not meet the "B" or "C" criteria for Listing 12.04 (Affective Disorders).  (R. 19.)  The ALJ found that with respect to the "B" criteria, plaintiff did not exhibit marked limitation in two of the four areas of functioning.  Specifically, the ALJ noted that:

> in the areas of activities of daily living, social functioning and episodes of decompensation, there is no evidence of limitation.  Claimant reported daily activities including driving, keeping doctors' appointments, shopping (albeit with help), light cleaning, vacuuming, working on crafts, traveling to New Jersey, and she socializes at the bar on Fridays.  At all times relevant to this decision, claimant has had no episodes of decompensation.  In the remaining area of maintaining concentration, persistence or pace, claimant is assessed with a mild to

>   moderate limitation, consistent with the below non-exertional limitation that she is able to perform simple and routine work but she is unable to perform complex or detailed work.

Id. With respect to the "C" criteria, the ALJ found that there was: (1) no medical documentation supporting that plaintiff had repeated episodes of decompensation of extended duration; (2) no evidence of a residual disease process that resulted in marginal adjustment that even a minimal increase in mental demands or changes in the environment would be predicted to cause claimant to decompensate; or (3) no current history of one or more years of inability to function outside a highly supportive living arrangement. Id.

>   Contrary to plaintiff's assertions, the ALJ set forth reasons for deciding to

attribute less than controlling weight to the opinion of Dr. Spergel.[9] The ALJ explained that he did not assign significant weight to Dr. Spergel's opinion since it was not supported by the medical evidence detailed in the opinion of the ALJ.[10] (R. 17-21.) In addition, the ALJ noted

---

[9] Though not specifically raised by plaintiff, the ALJ also set forth reasons for not attributing controlling weight to the opinion of Dr. Mauthe, plaintiff's treating physician. (R. 17-20.) A treating physician's opinion is entitled to controlling weight if it is consistent with the other substantial evidence in the record and is supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.927(d)(2). If substantial evidence in the record supports a conclusion contrary to that of the treating physician, however, the ALJ may reject the treating physician's findings. Frankenfeld v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)). The ALJ pointed out that Dr. Mauthe's opinion was not supported by the medical evidence of record, including his own clinical findings, and objective medical tests. Moreover, Dr. Mauthe consistently recommended only conservative treatment. (R. 17-20, 182, 327, 332.) Accordingly, substantial evidence supports the ALJ's decision to accord less than controlling weight to the opinion of Dr. Mauthe.

[10] This evidence also is set forth in the body of this opinion.

that Dr. Spergel's opinion was based upon plaintiff's subjective complaints, which also were not supported by the medical evidence.[11]  (R. 20.)

       The Commissioner's regulations allow the ALJ to consider daily activities as part of the credibility analysis.  See 20 C.F.R. § 416.929(c)(3)(I).  Furthermore, it is within the province of the ALJ to evaluate the credibility of the claimant.  Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  The Third Circuit has stated that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence."  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529).  See also Burns v. Barnhart, 312 F.2d 113, 129 (3d Cir.2002) (subjective complaints must be given serious consideration).  In the present case, the ALJ evaluated the evidence of record and determined that plaintiff's subjective complaints were belied by her activities of daily living, the medical evidence of record, and her treatment history.  This determination was within the ALJ's province.  See McGonigal v. Barnhart, 2004 WL 2397398, at *5 (E.D. Pa. Oct. 22, 2004) (holding that it was within the ALJ's province to determine that the credible evidence contradicted the plaintiff's testimony and that his ailments were not as debilitating as he described).

       Specifically, the ALJ noted that plaintiff's activities of daily living belied her complaints of disabling pain.  (R. 20-21.)  As the ALJ indicated in his opinion, plaintiff reported hobbies such as working on her computer, making crafts and gardening.  (R. 21, 49-50.)  Plaintiff also stated that she occasionally visited wineries with her boyfriend and socialized at a bar on

---

[11]    In addition, Dr. Spergel was not a treating physician, and saw plaintiff at the behest of her attorney in connection with an automobile accident. Moreover, Dr. Spergel based his opinion largely on plaintiff's physical complaints, an area outside the expertise of Dr. Spergel.

Friday evenings. (R. 21, 52.) She attended doctors' appointments, did light housework, cooked, and shopped with assistance. (R. 21, 49-54, 56.) Plaintiff also reported that she was able to drive a car for forty-five minutes at a time and stand for forty-five minutes at a time. (R. 147-48.) In addition, plaintiff reported to Dr. Spergel that Dr. Mauthe was the only physician who placed restrictions on her, and this single restriction pertained to heavy lifting. (R. 149.)

For all of these reasons, the court concludes that the ALJ properly considered and weighed the evidence of record. The ALJ accounted for plaintiff's physical and mental work-related restrictions supported by the record. He limited plaintiff to simple, routine, low-stress work that allowed for a sit/stand option at forty-five minute intervals. Work which could be performed by a person with these limitations was identified by the VE, and exists in significant numbers in the regional and national economies. (R. 58-60). Thus, this court finds that substantial evidence in the record supports the ALJ's assessment of Dr. Spergel's opinion.

## V.    CONCLUSION

The issue before the court is whether there is substantial evidence to support the ALJ's decision to deny benefits, "not whether a different conclusion might have been reached, or even whether a contrary result might be decidedly more reasonable." Czejak v. Sullivan, 1989 WL 108263, at *1 (E.D. Pa. Sept. 19, 1989). For all the above reasons, the court finds that there is substantial evidence to support the ALJ's finding that plaintiff was not disabled under the Act. Accordingly, the court makes the following:

## R E C O M M E N D A T I O N

AND NOW, this     day of July, 2005, upon consideration of plaintiff's motion for summary judgment and defendant's motion for summary judgment, it is respectfully recommended that plaintiff's motion for summary judgment be DENIED and defendant's motion for summary judgment be GRANTED.

BY THE COURT:

_____
THOMAS J. RUETER
United States Magistrate Judge